UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

SENA LONDON,

Plaintiff,

v.

SONY MUSIC PUBLISHING (US) LLC,

Defendant.

Case No. 25-CV-6647

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Sena London ("Plaintiff"), proceeding pro se, alleges as follows:

**I. PRELIMINARY STATEMENT**

1. Plaintiff Sena London, a disabled U.S. Army veteran and cybersecurity professional, brings this action for discrimination, retaliation, hostile work environment, whistleblower retaliation, and fmisrepresentation.

2. Plaintiff documented serious governance and cybersecurity deficiencies implicating Sarbanes-Oxley (SOX), Dodd-Frank, SEC Rule 21F-17(a), and industry standards.

3. Defendants publicly promote diversity, equity, inclusion (DEI), and compliance but internally engaged in selective disclosure, retaliation, favoritism, and misrepresentation, targeting Plaintiff for raising protected concerns.

4. Defendants' conduct not only harmed Plaintiff but also presented material risks to the investing public, job seekers, and market integrity by concealing governance failures in violation of SOX and SEC disclosure requirements.

1

5. Before initiating this action, Plaintiff provided formal written notice to Sony Music Publishing outlining concerns regarding discrimination, harassment, retaliation, suppression of whistleblower activity, and threats of career harm.

6. Plaintiff further offered to assist in drafting policy reforms. Defendants, however, had no genuine intention of inclusion or good faith engagement; rather, their objective was to use Plaintiff as a shield to deflect accountability for cybersecurity failures and risks in their anticipated tabletop exercises.

7. When Plaintiff instead engaged in whistleblowing and offered substantive assistance, Defendants did not respond constructively but instead chose to retaliate.

8. Defendants failed to respond despite multiple documented good-faith follow-ups.

9. At the time of filing, the Equal Employment Opportunity Commission (EEOC) online appointment scheduler displayed no available appointments, making it impossible to promptly initiate an EEOC charge.

10. This unavailability was later confirmed by the EEOC. Given the ongoing psychological harm to Plaintiff, including the risk of evidence spoliation and continued exclusion from professional and workplace opportunities, Plaintiff elected to file this suit directly in federal court to preserve his rights and integrity.

11. On September 17, 2025, the EEOC confirmed Plaintiff's interest in filing a charge of discrimination, acknowledging that it would follow up with Plaintiff even if no appointment was available, thereby preserving Plaintiff's rights under federal anti-discrimination statutes.

## II. JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 1331 for federal questions.

13. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for related state law claims.

14. Venue is proper under 28 U.S.C. § 1391 because the events occurred in this District.

## III. PARTIES

15. Plaintiff Sena London is an Illinois resident, disabled veteran, and SMP 2025 Summer Fellow.

16. Defendant Sony Music Publishing (US) LLC ("SMP") is a New York limited liability company and Plaintiff's internship host.

17. SMP is a wholly owned indirect subsidiary of Sony Group Corporation, a publicly traded Japanese corporation subject to SOX and SEC regulations via its designation of Sony Corporation of America ("SCA") as its U.S. SEC agent.

## IV. FACTUAL BACKGROUND

18. From the first day of the internship, Plaintiff was subjected to inappropriate and probing behavior initiated by Director Harry Halikias.

19. This included attempts to introduce unrelated topics into workplace discussions, leave physical records in team communications, and analyze Plaintiff's reactions.

20. Halikias asked intrusive and irrelevant questions, including:

   a. whether Plaintiff drove from Illinois to New York every day;

   b. whether Plaintiff could remember what had been discussed the day before; and

   c. whether Plaintiff had ever been in war or deployed during his military service.

21. These questions were not job-related and instead constituted attempts to test, unsettle, and invade Plaintiff's privacy, specifically targeting his disability and veteran status.

22. This probing pattern continued through a fellow intern and was later echoed by senior leadership, demonstrating a broader culture of probing Plaintiff's disability rather than assessing his professional skills.

23. Weeks before the July 24 CEO/DEI event, Plaintiff attended another scheduled intern program event.

24. As Plaintiff approached the event, he met Director Halikias near the elevator on the same floor where the event was being held.

25. After Plaintiff entered the event space, almost everybody abruptly departed, leaving Plaintiff largely isolated and standing alone.

26. Plaintiff alleges this was an act of intentional isolation and humiliation, carried out in retaliation for his compliance-related disclosures and risk memorandum, and was part of a broader retaliatory pattern.

27. On July 3, Plaintiff authored a Governance Risk Memorandum documenting: lack of IT asset inventory, incomplete system architecture, and segregation-of-duties conflicts.

28. Plaintiff flagged additional inconsistencies in threat/risk assessment, including: risk ratings assigned without criteria, mismatches between threat levels and exposures, and absence of consolidated inventories to support assessments.

29. Plaintiff discovered that Defendants relied on email for cyber intelligence and threat assessment sharing across SMP, Sony Global Cybersecurity, and Sony Pictures Entertainment (SPE), involving the responsibility of SCA as US SEC Agent.

30. Email is insecure and unauditable, leaving no way to map each decision or action to a responsible party. This created systemic accountability gaps in violation of SOX and industry standards, which Plaintiff reported in good faith.

31. On July 4, Halikias threatened Plaintiff's career if he continued documenting risks, directly linking the threat to Plaintiff's protected activity of reporting governance and cybersecurity deficiencies.

32. Plaintiff escalated the memo to DEI leaders Madilyne Acosta, Tiffany Warren, and Taylor Jordy, and HR Manager Augustina Saetone.

33. All DEI leaders remained silent and offered no guidance.

34. Only Saetone responded, instructing Plaintiff to escalate to Courtney Pender (VP of People, Americas).

35. Pender escalated to Nicole Giacco (SMP Ethics Counsel) and Anthony Ford (SCA Counsel), drawing SCA directly into the chain and confirming Sony's knowledge of Plaintiff's protected disclosures.

36. Two weeks before the program's conclusion, Plaintiff formally requested to complete the remainder of the internship fully remote as an accommodation.

37. Courtney Pender (VP of People, Americas) responded by asking Plaintiff to quit early while being paid through the program's end, citing Sony's claimed inability to accommodate full remote work. Plaintiff alleges this request was retaliatory because it followed his protected compliance reporting.

38. Plaintiff refused to quit and continued to work under the hybrid schedule.

39. On August 4, 2025, Plaintiff was relocated to the Sony Pictures side of the building, isolating him from SMP staff.

40. On August 5, 2025, after Plaintiff had completed the workday and returned home, SMP notified him that he would be placed on full remote status. Plaintiff alleges this decision was not a disability accommodation but a retaliatory measure to restrict his access and prevent him from attending company events scheduled that same day and week.

41. That same day, a scheduled DEI event was abruptly canceled, with the stated reason that DEI Executive Tiffany Warren could not attend. Plaintiff alleges the cancellation was part of the broader pattern of denying him professional networking and DEI-related opportunities in retaliation for his compliance reporting.

42. Plaintiff also observed SMP CEO John Platt's assistant, Willingham, stationed near the elevator throughout the day, though absent when Plaintiff entered to check out, reflecting unusual monitoring of his movements. Plaintiff alleges this surveillance reflected retaliatory scrutiny tied to his disclosures.

43. On August 12, 2025, while still a full-time employee on payroll and in possession of his company laptop, Plaintiff discovered his physical access was restricted and that his photo had been circulated to Sony security staff. When Plaintiff attempted to use the facility and collect a free disk available to employees as memorabilia, he was treated as a security threat. Plaintiff alleges this action was retaliatory and directly tied to his whistleblowing and risk reporting.

44. By contrast, the comparator, still an undergraduate at the time of hire, lacking industry minimum standard certifications, and holding two conflicting analyst positions, was granted full-time remote work from the outset without resistance. Plaintiff alleges this disparate treatment shows that his protected activity, not legitimate business necessity, motivated Defendants' actions.

45. Plaintiff alleges this sequence shows that Defendants' actions were not legitimate accommodation efforts but a retaliatory campaign designed to isolate, stigmatize, and exclude him from professional opportunities.

46. Prior to the July 24, 2025 meeting with Sony's ethics, governance, and compliance attorney, Plaintiff requested to be accompanied by an independent witness. This request was denied, with SMP instead suggesting DEI leaders, none of whom had provided assistance after Plaintiff raised compliance issues.

47. Plaintiff then requested to be accompanied by his attorney. SMP leadership remained silent, refusing to confirm or facilitate such representation.

48. At no point did Defendants offer independent oversight or neutral review of Plaintiff's disclosures. Instead, Sony inserted its own ethics counsel (Giacco) and corporate attorney (Ford), both of whom represented Sony's interests exclusively and not Plaintiff, thereby retaliating against him for seeking independent support.

49. Defendants refused to allow Plaintiff to bring his own independent witness, and further discouraged Plaintiff from communicating about the case externally, actions Plaintiff alleges were retaliatory in nature.

50. In order to preserve the integrity of his disclosures and ensure regulatory accountability, Plaintiff proceeded to file a tip with the U.S. Securities and Exchange Commission (SEC) pursuant to SEC whistleblower provisions.

51. The silence of DEI leaders in response to Plaintiff's escalations strongly confirms that Plaintiff's hiring into the fellowship was used primarily as a public relations tool, designed to deflect accountability, mislead regulators, and reinforce Sony's anticipated narrative control while externally promoting a false image of diversity, equity, and inclusion.

52. SMP leadership adopted strategic silence while developing methods to reframe narratives, mislead facts, and undermine Plaintiff's protected activity.

53. No support or employee assistance resources were offered; instead, retaliation intensified, including access restrictions and exclusion from professional opportunities, all following Plaintiff's SEC whistleblower filing and internal disclosures.

54. On the same day, ten minutes before the CEO/DEI Fellows event, Director Harry Halikias requested a discussion with Plaintiff in his office, diverting him from the program. When Plaintiff asserted the need to attend the scheduled program, Halikias remarked: "Hey, did you forget to go to your meeting? You have to go." Plaintiff alleges this was an attempted obstruction and mischaracterization in retaliation for his disclosures.

55. Plaintiff was diverted into a compliance meeting with Giacco (SMP Counsel) and Ford (SCA Counsel) regarding his risk assessment and memo, where Giacco later stated they both represented Sony and not Plaintiff. Plaintiff alleges this diversion was intended to undermine his protected activity.

56. On July 28, 2025, at approximately 4:45 PM, following the DEI Fellows meeting with CEO Rob Stringer, SME DEI Executive Tiffany Warren engaged in a brief but pointed interaction with Plaintiff outside the elevator.

57. Warren asked Plaintiff, "Where are you going?" When Plaintiff responded, "SMP," she followed up with, "On which floor?" Plaintiff alleges this exchange was calculated to unsettle him and aligned with the broader pattern of retaliatory probing.

58. The context and delivery of this exchange felt calculated and aligned with the broader pattern of psychological probing and retaliatory conduct that Plaintiff experienced throughout the internship.

59. On August 12, 2025, the same day Plaintiff discovered his access had been restricted and his photo circulated to Sony security staff, Nicole Giacco (SMP Ethics Counsel) emailed Plaintiff.

60. In her message, Giacco claimed that SOX and SEC regulations "do not apply" to Plaintiff's disclosures and that SMP maintained "accountability and oversight" through Sony's governance policies.

61. Plaintiff alleges these statements were misleading and retaliatory. They contradicted Sony's 2024 SEC filings, which identified Sony Corporation of America as SEC agent, and further undermined Plaintiff's protected disclosures by reframing them as irrelevant.

62. The email occurred while Plaintiff was still officially employed, carrying out his duties with company-issued equipment, demonstrating that Defendants chose misrepresentation and retaliation over lawful accommodation or compliance, and that this adverse action was motivated by his protected reporting.

63. Plaintiff further alleges that by denying the applicability of SOX and SEC requirements while restricting an internal whistleblower, Defendants' conduct posed material risks to investors, the public, and market integrity, by concealing governance failures that directly affect accountability and financial transparency, and did so in retaliation for Plaintiff's protected activity.

## V. CLAIMS FOR RELIEF

64. Count I – Disability Discrimination (ADA, Title VII).

65. Count II – Hostile Work Environment (ADA, Title VII).

66. Count III – Retaliation (ADA, Title VII, SOX, Dodd-Frank).

67. Count IV – Whistleblower Retaliation (SOX, Dodd-Frank, SEC Rule 21F-17).

68. Count V – NYSHRL / NYCHRL.

69. Count VI – NY Labor Law § 740 (Whistleblower).

70. Count VII – Misrepresentation.

71. Count VIII – Intentional Infliction of Emotional Distress (IIED).

## VI. PRAYER FOR RELIEF

72. WHEREFORE, Plaintiff respectfully requests the following relief:

73. Compensatory damages (front pay, reputational harm).

74. Emotional distress damages.

75. Punitive damages.

76. Equitable relief, including DEI oversight and preventing Defendants from accessing any disability database.

77. Costs and fees.

78. Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

79. Plaintiff demands trial by jury on all issues so triable.

Dated: 09/23/2025

Bloomington, Illinois

Respectfully submitted,

_____

Sena London (Pro Se)

8